## SUPREME COURT.

### ESMAY agt. FANNING.

A bailee of a chattel is answerable in trover, on showing a delivery to a person not authorized to receive it.

Where I. E. loaned a carriage to H. F. to be by H. F. safely kept and occasionally used, and to be redelivered to I. E. on request, held that the place of redelivery was the residence of I. E. and that a delivery elsewhere without authority was a conversion. The fact that the carriage was stored by I. E. in the stable of one C. at the time H. F. first received it did not authorize H. F. to return the carriage to C., who had ceased to be the agent of I. E.

In such case the delivery of the carriage to C. instead of I. E. amounted to a conversion, and proof of a demand and refusal before suit brought was unnecessary. Had a demand, however, been necessary, the declaration of the defendant in answer to the demand would have been admissible as well on the part of the defendant as the plaintiff.

*Schenectady General Term, May* 1850. WILLARD, PAIGE, CADY and HAND, *Justices.* This was an action of trover for a carriage. The pleadings were drawn up under the Code of 1848. The complaint stated that the plaintiff, in June 1846, being pos-

Esmay agt. Fanning.

sessed of a carriage of the value of $250, at the request of the defendant loaned and delivered the same to the defendant, to be by him safely kept for the plaintiff, and to be by the defendant redelivered to the plaintiff on request; that the defendant did not safely keep the said carriage for the plaintiff, but converted the same to his, the defendant's own use. That the defendant, although often requested so to do, has not returned the said carriage to the plaintiff, and the plaintiff claims damages, &c. &c. The complaint was dated August 12, 1848.

The answer alleges that the defendant did safely keep the carriage, and denies the conversion thereof to the defendant's use. It then sets out that the carriage was delivered by the plaintiff to the defendant with the privilege of using the same in consideration of the defendant's storing and safely keeping the same, and for a farther consideration that the plaintiff was to have the privilege of using the defendant's horses whenever he required the same; that the carriage was occasionally used by both parties, and the defendant's horses were used by the plaintiff. The defendant denies that he has failed to redeliver the carriage to the plaintiff, but on the contrary states that he has redelivered it to the plaintiff or his agent, in as good order as it was when received by the defendant, &c.

The reply denies that the defendant safely kept the carriage for the plaintiff while it was in the defendant's possession. The reply denies that the storage formed any part of the consideration for the loan of the carriage; alleges that the defendant promised to keep it safely; denies that plaintiff was to use defendant's horses as a consideration for such loan of the carriage, or that the carriage was used in common by the parties, while it was in the defendant's possession. The reply further alleges that the loan of the carriage was made at the defendant's request, and for his sole use, and without reward or hire. It denies that the defendant has redelivered the carriage to the plaintiff or to his agent.

The cause was referred to a referee, who reported that he found as facts, that about the 1st of June 1846, the plaintiff loaned to the defendant the carriage in question to be safely kept by the

Esmay agt. Fanning.

defendant for the plaintiff, and to be redelivered to the plaintiff on request; that the defendant had been requested to redeliver the same to the plaintiff; that the defendant and plaintiff might each use the carriage and the defendant's horses when he chose; that said carriage was obtained by defendant from the livery stable of George L. Crocker, then of Albany city, and that he kept it safely till about the 1st November 1846, during which time it was used occasionally by both parties, plaintiff and defendant. That about the 1st November 1846, it was returned by the defendant to the stable of said Crocker, *which return of the carriage to the stable of Crocker, the referee decided was not a redelivery of the carriage to the plaintiff or his agent.* He therefore reported in favor of the plaintiff for the value of the carriage at that time, on which judgment was thereupon given as for a conversion of the carriage.

The defendant appealed from the decision of the referee. A case, containing the whole testimony and various points ruled by the referee, was returned on the appeal as parcel of the record.

From the case it appears that Crocker testified that he was not the agent of the plaintiff to receive back the carriage at any time; that the defendant returned the carriage to his the witness's stable, and the witness, of his own accord notified the plaintiff that the carriage was left by the defendant at his stable; the plaintiff refused to have any thing to do with it.

It appears also that the referee decided that a demand and refusal were admitted by the pleadings, to which the defendant's counsel excepted.

The plaintiff called one Nichols as a witness, who testified that in the summer of 1848, and before the commencement of this action, he, at the request of the plaintiff, called on the defendant and told him to return the said carriage to the plaintiff. On his cross examination the defendant's counsel proposed to ask the witness to relate the answer which the defendant gave to that reply. This was objected to by the plaintiff's counsel, and excluded by the court, and the defendant's counsel excepted. The defendant's counsel then offered to prove that the defendant said

Esmay agt. Fanning.

that the carriage had been *returned to the plaintiff pursuant to the agreement between them.* This also was objected to and ex-cluded, to which the plaintiff's counsel again excepted. Other facts are alluded to in the opinion of the court.

The defendant's counsel insisted that the judgment should be reversed.

F. S. EDWARDS, *for Defendant.*

H. C. VAN VORST, *for Plaintiff.*

By the Court, WILLARD, J.—The gist of this action is the con-version and deprivation of the plaintiff's property, and not the acquisition of property by the defendant (3 *Barn. & Ald.* 685).

The general requisites to maintain the action are property in the plaintiff's actual possession, or a right to the immediate pos-session thereof and a wrongful conversion by the defendant (4 *Barb. S. C. Rep.* 565). The plaintiff's title was not disputed in this case. The issue is on the conversion; or, in other words, it is whether the defendant redelivered the carriage to the plaintiff or his agent before the commencement of this suit. The plain-tiff alleges a refusal to redeliver it, and the defendant avers that he did redeliver it. The referee found the fact that the defend-ant did not redeliver the carriage to the plaintiff or his agent; and the proof is that Crocker, to whom the defendant did deliver the carriage in November 1846, was not at that time the agent of the plaintiff or authorized to receive it, and there is no evi-dence that the plaintiff ever assented to that delivery. The question therefore becomes narrowed down to this; whether a bailee of a chattel is answerable in trover on showing a delivery to a person not authorized to receive it. In Devereux vs. Bar-clay (2 *B. & Ald.* 702), it was held that trover will lie for the misdelivery of goods by a warehouseman, although such misde-livery was occasioned by mistake only, and this court in Packard vs. Getman (5 *Wend.* 613), held that the same action would lie against a common carrier who had delivered the goods by mis-take to the wrong person. The same point was ruled by Lord Kenyon in Youl vs. Harbottle (*Peake N. P. Cases,* 49,) and by

the English Common Pleas in Stephenson vs. Hart (4 *Bingnam*, 476). If trover will lie against a common carrier or a warehouseman for a misdelivery, it can, under the like circumstances, be sustained against a bailee for hire or a gratuitous bailee. It results from the very obligation of his contract that if he fails to restore the article to the rightful owner, but delivers it to another person not entitled to receive it, he is guilty of a conversion (*Story on Bailment*, § 414).

The referee found as a fact that the carriage was not redelivered to the plaintiff, but was delivered to another person having no right to receive it. The evidence detailed in the case warranted that finding and it can not be disturbed by this court. We think the referee drew the right conclusion from that fact and justly held the defendant liable for the value of the carriage.

As the parties all lived in the same city the carriage should have been returned to the plaintiff, unless there was some agreement to the contrary. The fact that the carriage was stored by the plaintiff in Crocker's stable at the time the defendant first received it, did not authorize him under a contract to return it to the plaintiff, to deliver it to Crocker, who had ceased to be the plaintiff's agent.

The place of delivery of the carriage was the plaintiff's residence (Barnes vs. Graham, 4 *Cowen*, 452; *Story on Bailment*, § 257, 261, 265). A delivery elsewhere, without authority, was a conversion; we have not adopted the civil law, which allowed the bailee, in case no place was agreed on, to restore the property to the place from which he took it (*Story on Bailment*, § 117).

It was not necessary, in this case, to prove a demand and refusal. Had the carriage remained in the defendant's possession, no action could have been maintained by the plaintiff against the defendant until it had been demanded and the defendant had neglected or refused to return it. A demand and refusal are not a conversion, but evidence from which it can be inferred. A demand is necessary whenever the goods have come lawfully into the defendant's possession, unless the plaintiff can prove some wrongful act of the defendant in respect of the goods which

amounts to an actual conversion (2 *L. N. P.* 1483; Bates vs. Conklin, 10 *Wend.* 389; Tompkins vs. Haile, 3 *Wend.* 406). As the delivery of the carriage by the defendant to Crocker instead of the plaintiff amounted to a conversion; proof of a demand and refusal was unnecessary. The testimony of Nichols, therefore to prove a demand was immaterial and the decision of the referee refusing to permit the defendant to prove what he said at the time the demand was made could have no influence on the result of the cause. Had a demand been necessary the declaration of the defendant in answer to the demand would have been admissible as well on the part of the defendant as the plaintiff. The decision of the referee that a demand and refusal were admitted by the pleadings, whether right or wrong, worked no injury to the defendant.

A wide range was taken on the argument on the *implied* obligations resulting from the various kinds of bailment, and particularly with reference to the restoring the thing bailed to the bailor. But it seems unnecessary to discuss this subject in this case because here there was an *express* agreement to return the property *to the plaintiff* on request. The judgment must be affirmed.