ROBERT GIBBONS, SURVIVOR, ETC., v. JESSE H. FARWELL.

[See 63 Mich. 146.]

*Practice—Directing verdict—Trover—Conversion by carrier.*

1. Before a verdict can be properly directed for a defendant, *all* the testimony in favor of the plaintiff bearing upon the issues, given by him and his witnesses, and *all* making a case for him given on the part of the defendant, if accepted as true, must fail to make out a *prima facie* case for the plaintiff, after the most favorable construction that can be possibly given to such testimony.

2. The owners of a quantity of hop-poles contracted with defendant for their carriage by water, on a steam-boat owned by him, to the city of Detroit, and on the arrival of the vessel the master delivered the poles to a third party without the consent of the consignees or consignor.

    *Held,* that such delivery was a *tortious* one, and must be regarded as a *conversion* of the property by the defendant.

3. The *intention* with which a wrongful act is done by which the owner is *deprived* of his property, except when *malicious,* is of little consequence, it being the *effect* of the act which constitutes the *conversion.*

4. If a carrier of goods allow an officer to take possession of the same, he cannot defend against an action by the owner for their conversion unless he shows that the officer had a *legal* right to take the property by virtue of his writ.

5. Where a defendant in trover seeks to defend on the ground of the seizure of the property under *legal process,* the proceedings *anterior* thereto must be put in evidence. *Beach v. Botsford,* 1 Doug. 199 ; *Gidday v. Witherspoon,* 35 Mich. 368.

Error to superior court of Detroit. (Chipman, J.) Argued July 13 and 14, 1886. Decided October 28, 1886.

Trover. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Atkinson & Atkinson* (*Alfred Russell,* of counsel), for appellant:

The duty of a common carrier is to carry the goods safely, and deliver them to the proper party, and he is only excused from so doing by the act of God, or of the public enemy: Ang. Carr. § 67.

Conversion consists of any *tortious* act that deprives the owner of his goods, wholly or but for a time (3 Cooley's Bl. Comm. 152, notes), or any *illegal* use of the property (*Fisher v. Kyle,* 27 Mich. 454).

Delivery to a wrong person is conversion: Ang. Carr. § 324; *Illinois Central R. R. Co. v. Parks,* 54 Ill. 294; *Esmay v. Fanning,* 5 How. Pr. 228; *Coykendall v. Eaton,* 55 Barb. 188; *Barnum v. Stone,* 27 Mich. 335–6; *Bissell v. Starr,* 32 Id. 298; *Edwards v. Frank,* 40 Id. 616; *Hicks v. Lyle,* 46 Id. 488.

If the carrier allow the sheriff to take the goods, it is no defense unless it is shown that he had the *right* to take them: *Kiff v. Old Colony & N. Ry. Co.,* 117 Mass. 591; and a mere seizure will not be an excuse: Ang. Carr. § 337 *a.*

*Moore & Canfield,* for defendant:

A failure to deliver, or even a mis-delivery, is not of itself proof of conversion: 2 Greenl. Ev. § 642; *Bromley v. Coxwell,* 2 Bos. & Pul. 438; *Burroughes v. Bayne,* 5 H. & N. 301; Cooley, Torts, 450.

Defendant is not a common carrier, nor to be held to the strict liabilities of a common carrier: Ang. Carr. §§ 46, 47, 60; Hutch. Carr. §§ 4, 5, 9, 354; Story, Bail. § 457.

Even if he were, he is not liable to plaintiff in trover, there being no proof of a conversion by him: *Magnin v. Dinsmore,* 70 N. Y. 410; Ang. Carr. §§ 431, 433; *Scovill v. Griffith,* 2 Kern. 509; Bigelow, Torts, 199; *Beardslee v. Richardson,* 11 Wend. 25.

SHERWOOD, J. This is an action of trover, to recover the value of 7,000 hop-poles, a part of the cargo of the barge

Southampton, and was once before in this Court.   See 58 Mich. 233.

It appears from the record now before us that in 1880 . John McKay was getting out hop-poles at Schneaux islands, in Lake Huron, and that he made an arrangement with the firm of Johnstone & Gibbons, of which the plaintiff is sur- vivor, by which they were to furnish the necessary money and provisions to carry on the work.   McKay was to get out the timber and poles, and ship them to Johnstone & Gibbons,. at Detroit, who were to be the owners of the property; and when sold by them, McKay. was to be paid for his services whatever sum was received for the poles over and above money advanced and goods furnished by Johnstone & Gib- bons to pay for them.

The defendant. was the owner of a steam-boat, run by Capt. Rose at this time, and the plaintiff and his partner made an engagement with the owner to carry a load of goods to the islands, and bring back the property in question to Detroit.

The captain, while at the islands, took on board the poles in question, and other property, as furnished by McKay, to carry them to Detroit.

The following is the bill of lading given at the time they were shipped by the master:

"CHEBOYGAN, MICHIGAN, September 4, 1880.
"Shipped, in good order and well conditioned, by John McKay, agent, for account and at the risk of whom it may concern, on board the barge Southampton, whereof H. Rose is master, bound for Detroit, the following articles, as here- in marked and described, to be delivered in like good order and condition, as addressed in the margin, or to his or their assigns or consignees, upon paying the freight and charges as entitled by law, dangers of navigation excepted.
"In witness whereof, the master or clerk of said vessel has affirmed to—bills of lading, of this tenor and date, one of which being accomplished, the others to stand void."

The consignment is to Johnstone & Gibbons, Detroit, Michigan.   Under the head of "Articles" is written, "250

cords cedar posts; 7,000 hop-poles, cedar." Then follow the words "more or less." Under the head of "Lake Freight" is written, "$3 pr. cord on posts," and the bill is signed, "CAPT. H. ROSE."

It appears from the testimony of McKay that he got out the poles for Johnstone & Gibbons, and that he acted as their agent in the transaction after the poles were placed on board the boat Southampton. The plaintiff and his partner were notified of the shipment by Mr. Farwell. The barge was taken in tow by a propeller, and, after the cargo arrived at Detroit, the poles were delivered by the master (while, as he claims, he was acting as deputy United States marshal) to C. P. Taylor (and who, as he claims, was another deputy United States marshal). This was done by the master without the consent of the consignees or consignor, and, so far as the record shows, the master never made any attempt to make delivery of any kind of the goods to them, or either of them.[1]

The plaintiff's declaration contains a single count in trover for the value of the poles. The plea is the general issue, with notice that defendant would show the property was taken from the master by legal process, so that delivery to the consignees could not be made. The cause was tried in the superior court of Detroit, before a jury, and the verdict was directed by the court for the defendant; the court holding that, under the facts stated in the record, trover would not lie. The plaintiff brings error.

We are not able to agree with the learned judge of the superior court in his decision in this case. In giving his directions to the jury, he said:

"In order to establish a case for recovery in trover, there must be shown a wrongful act, and an intentional conversion by the defendant. * * * In an action of trover, the defense is complete when the plaintiff shows, in making his

---

[1] See *Gibbons v. Robinson*, 63 Mich. 146.

case, that the property was taken from the defendant without the consent of the defendant.  *  *  *  The first principle is that the act of the defendant must be shown to be voluntary and intentional. Further than that, the evidence shows the title to have been in another person than the plaintiff, and, under the testimony, the plaintiff cannot recover."

Before a verdict can be properly directed by the court for the defendant, all the testimony in favor of the plaintiff bearing upon the issues, given by him and his witnesses, and all making a case for him given on the part of the defendant, if accepted as true, must fail to make out a *prima facie* case, after the most favorable construction that can be possibly given to such testimony for the plaintiff.

Under this rule, what does the testimony show in this case? That the plaintiff and his partner were the owners of the poles in question at the Schneaux islands, in Lake Huron, and had an agent there getting them out, and looking after them, and attending to their shipment. The defendant undertook to carry by water, and deliver to plaintiff and his partner, 7,000 poles at Detroit. Defendant carried the poles, but, when he arrived at Detroit, made no attempt to deliver them to the plaintiff and his partner; but, when the boat arrived, the master, who was the servant of the defendant, and assumed to be a deputy United States marshal, delivered the property, without the consent of the owners, to a third party.

Can there be any question, under such a state of facts, but that the defendant, in allowing the master (who must be considered as his servant) to make such disposition of the plaintiff's property, converted it? We think not.

The act of thus delivering the property to a third person was a tortious one, and especially so, if it is true, as claimed by the defendant, that the person to whom it was delivered denied the right of the plaintiff and his partner to control the property, and intended to contest their title thereto.

We think that, upon reason and authority, the act of the

defendant's servant in wrongfully delivering the property to a person not entitled thereto must be regarded as the act of the defendant, and one of conversion. Cooley, Torts, 441, 448, 534; Edw. Bailm. § 162; 3 Cooley's Bl. Comm. 152, notes; Ang. Carr. § 324; *Syeds v. Hay*, 4 Term R. 260; *Keyworth v. Hill*, 3 Barn. & Ald. 685; *Fisher v. Kyle*, 27 Mich. 54; *Bullard v. Young*, 3 Stew. 46; *Ind. & St. L. R. R. Co. v. Herndon*, 81 Ill. 143; *Illinois Cent. R. R. Co. v. Parks*, 54 Id. 294; *Esmay v. Fanning*, 5 How. Pr. 228; *Coykendall v. Eaton*, 55 Barb. 188; *Bissell v. Starr*, 32 Mich. 298; *Edwards v. Frank*, 40 Id. 616; *Hicks v. Lyle*, 46 Id. 488; *Barnum v. Stone*, 27 Id. 335, 336.

The intention with which the wrongful act is done by which a party is deprived of his property, except when malicious, is of little consequence, provided the act is done. It is the effect of the act which constitutes the conversion. Edw. Bailm. § 162; Cooley, Torts, 534–538, 688; *Griswold v. Haven*, 25 N. Y. 595.

The defendant was a carrier, and, if the carrier of goods allow an officer to take the goods he is carrying, it is no defense, against the plaintiff's action of trover for their value, to show that an officer took them, unless he shows that he had a *legal* right to take them by virtue of his writ. Ang. Carr. § 337a; *Kiff v. Old Colony & N. Ry. Co.*, 117 Mass. 591.

It is claimed that such a showing was made in this case. We think not. The evidence by which it is claimed such showing was made, was, as we think, erroneously received against the objection thereto by the plaintiff's counsel, and cannot be regarded in this discussion.

There was better evidence of the facts sought to be established, and when the defendant seeks to show a better right to the property, or to its control, than the plaintiff claims, the legal proceedings upon which the officer's writ or order is based should be introduced. *Beach v. Botsford*, 1 Doug. 199; *Gidday v. Witherspoon*, 35 Mich. 368.

What we have said sufficiently indicates our views in this case.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.